# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

SYLVIA MEYER,                                    Case No. 1:09-cv-814
      Plaintiff                         Spiegel, J.
                                                 Litkovitz, M.J.

    vs

COMMISSIONER OF                                  **REPORT AND**
SOCIAL SECURITY,                                 **RECOMMENDATION**
      Defendant

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement

of Errors (Doc. 12), the Commissioner's Memorandum in Opposition. (Doc. 17) and plaintiff's

Reply. (Doc. 19).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1946 and was 62 years old at the time of the administrative law

judge's (ALJ) decision. She has a high school education and no past relevant work. (Tr. 52,

128, 133). Plaintiff filed an SSI application on September 11, 2007, alleging a disability onset

date of July 2, 2007, due to panic attacks, an anxiety disorder, and uterine cancer. (Tr. 97-120,

128). The application was denied initially and upon reconsideration. Plaintiff then requested

and was granted a de novo hearing before ALJ Sarah J. Miller. (Tr. 17-64). On February 24,

2009, plaintiff, who was represented by counsel, appeared and testified at the hearing. (Tr. 24-

51). A vocational expert (VE), William T. Cody, also appeared and testified at the hearing. (Tr.

52-62).

On April 24, 2009, the ALJ issued a decision denying plaintiff's SSI application.

(Tr. 8-16). The ALJ determined that plaintiff suffers from the following severe impairments: generalized anxiety disorder, panic disorder with mild agoraphobia, personality disorder with avoidant independent features, social phobia, bilateral carpal tunnel syndrome, and reactive airway disease. (Tr. 10). The ALJ further determined that plaintiff's alleged residual stomach pain from an umbilical herniorrhaphy was a non-severe medically determinable impairment. (Tr. 11). The ALJ found that plaintiff's severe impairments, considered singly and in combination, do not meet or equal the level of severity described in the Listing of Impairments. *Id.*

The ALJ determined that plaintiff retains the residual functional capacity (RFC) to perform a limited range of medium work as defined in 20 C.F.R. § 416.967(c) with the following limitations:

> She can lift and/or carry no more than 25 pounds frequently and no more than 50 pounds occasionally. The claimant can sit for no more than a total of 6 hours in an 8 hour workday and stand and/or walk for no more than a total of 6 hours in an 8 hour workday. The claimant must work in a clean environment which entails avoiding exposure to dust, fumes and chemicals. She is limited to using her hands to 2/3 of the workday. She is limited to simple and routine tasks that do not involve duties that necessitate public interaction. She is limited to occasional interaction with others in a superficial manner.

(Tr. 12). The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms are not credible to the extent they are inconsistent with plaintiff's RFC for medium work. (Tr. 13). The ALJ determined that plaintiff has no past relevant work. (Tr. 15). However, based on the VE's testimony, the ALJ determined that jobs exist in significant numbers in the national economy, such as laborer, kitchen helper, and cleaner, that plaintiff could perform given the RFC to perform a limited

2

range of medium work. *Id.* Consequently, the ALJ concluded that plaintiff is not disabled under the Social Security Act and therefore not entitled to SSI. (Tr. 16).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner. (Tr. 1-4).

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Social Security Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

3

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations.  20 C.F.R. § 416.920.  First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends.  Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends.  Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded.  20 C.F.R. § 416.920(d).  Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment.  If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform.  *Lashley v. Sec'y of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Sec'y of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Sec'y of H.H.S.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971).  Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in

4

the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at

1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the

Commissioner must come forward with particularized proof of plaintiff's individual capacity to

perform alternate work considering plaintiff's age, education, and background, as well as the job

requirements. *O'Banner v. Sec'y of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also*

*Richardson v. Sec'y of H.H.S.*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in

certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the

"grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2;

*O'Banner*, 587 F.2d at 323. *See also Cole v. Sec'y of H.H.S.*, 820 F.2d 768, 771 (6th Cir. 1987).

When the grid is not applicable, the Commissioner must make more than a generalized

finding that work is available in the national economy; there must be "a finding supported by

substantial evidence that a claimant has the vocational qualifications to perform *specific* jobs."

*Richardson*, 735 F.2d at 964 (emphasis in original); *O'Banner,* 587 F.2d at 323. Taking notice

of job availability and requirements is disfavored. *Kirk*, 667 F.2d at 536-37 n.7, 540 n.9. There

must be more than mere intuition or conjecture by the ALJ that the claimant can perform specific

jobs in the national economy. *Richardson,* 735 F.2d at 964; *Kirk,* 667 F.2d at 536-37 n.7. The

Commissioner is not permitted to equate the existence of certain work with plaintiff's capacity

for such work on the basis of the Commissioner's own opinion. This crucial gap is bridged only

through specific proof of plaintiff's individual capacity, as well as proof of the requirements of

the relevant jobs. *Phillips* v. *Harris,* 488 F. Supp. 1161 (W.D. Va. 1980) (citing *Taylor v.*

*Weinberger,* 512 F.2d 664 (4th Cir. 1975)). When the grid is inapplicable, the testimony of a

5

vocational expert is required to show the availability of jobs that plaintiff can perform. *Born*, 923 F.2d at 1174; *Varley* v. *Sec'y of H.H.S.,* 820 F.2d 777, 779 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk*, 667 F.2d at 538. In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling pain. *Duncan v. Sec'y of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Sec'y of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v.*

6

*Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35 F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

## MEDICAL RECORD

The record contains treatment notes from plaintiff's primary care physician, Dr. Lenchitz at Healthcare Connection, dated from August 2006 to September 2008. (Tr. 260-79, 307-12). In August 2006, plaintiff saw Dr. Lenchitz for hypertension, cholesterol and medication refill. (Tr. 267). She complained of fatigue "all the time," attributable to a lack of sleep for the past 10-12 years. *Id*. She only slept four hours a night with frequent early morning awakenings. *Id*. She has tried Ambien in the past, but stopped due to the side effects. *Id*. She also complained of bilateral forearm itchiness. *Id*. Plaintiff's motor function was normal bilaterally and her extremities and other neurological functions were normal. (Tr. 268). The examination of her abdomen was also normal. *Id*. Dr. Lenchitz diagnosed hypertension, hyperlipidemia, a rash on

7

her forearms, rosacea, an umbilical hernia, difficulty sleeping, and spotting. *Id.* The last treatment note from Dr. Lenchitz dated September 15, 2008, notes that Plaintiff did not have a recent RAD (reactive airway disease) diagnosis and her past medical history was noted as "? CTS bilat — 14 years of paresthesia." (Tr. 307).

On August 2, 2007, plaintiff underwent chest x-rays, which showed no active cardiopulmonary disease. (Tr. 203-04). A CT scan of the abdomen revealed multiple gallstones (Tr. 205); a CT scan of the pelvis showed a hernia. (Tr. 206). On August 20, 2007, plaintiff underwent a bone mineral density study of her hips and lumbar spine which was normal. (Tr. 201-02). Plaintiff underwent a colonoscopy in August of 2007 after being diagnosed with endometrial cancer. (Tr. 249-50, 274-75). The colonoscopy showed small non-bleeding internal hemorrhoids and evidence of diverticulosis; the examination was otherwise normal. *Id.*

After being diagnosed with endometrial cancer, plaintiff underwent a total abdominal hysterectomy and umbilical hernia repair on September 17, 2007. (Tr. 225-29). No complications were noted and she was discharged in stable condition. *Id.* On discharge, plaintiff was advised not to lift more than 10 pounds for four weeks. (Tr. 226).

On November 12, 2007, plaintiff was seen at University Hospital for complaints of difficult bowel movements. (Tr. 248). She was told to increase her fiber intake and to take Miralax. *Id.* She returned in January of 2008 with similar complaints and was advised to continue taking Miralax and follow-up with diagnostic testing. (Tr. 247). The results showed a persistent rectocele. (Tr. 253). In June of 2008 plaintiff reported she was only moderately

bothered by it and was told to return as needed since she was not interested in surgical repair. (Tr. 304-05).

On October 2, 2008, plaintiff underwent an EMG of her upper extremities due to complaints of hand numbness. (Tr. 302). The results showed bilateral carpal tunnel syndrome, severe on the left. *Id.*

Plaintiff treated with therapist Susan Schroeder, P.C.C., at Norcen Behavioral Health Systems from April through August of 2007. (Tr. 208-24). Plaintiff presented with severe anxiety and paranoia. (Tr. 212-24). Therapist Schroeder reported plaintiff's affect was moderately constricted and her mood was mildly irritable. *Id.* Plaintiff was noted to be severely depressed and anxious. *Id.* Plaintiff demonstrated average intelligence. *Id.* Plaintiff's thought process was logical, her speech was clear, and she had no delusions or hallucinations. *Id.* Plaintiff appeared to be suspicion of others and mistrusting of them. *Id.* Therapist Schroeder diagnosed panic disorder with agoraphobia and social phobia and assigned plaintiff a Global Assessment of Functioning[1] (GAF) score of 54. (Tr. 221). Plaintiff was discharged in August 2007 because she did not return for treatment. (Tr. 208-09). On the discharge summary, Therapist Schroeder assigned a plaintiff a GAF score of 48 and further reported that plaintiff was not disposed to making changes to deal with her social fear and personal anxiety. (Tr. 208).

George Lester, Psy. D., examined plaintiff on December 3, 2007, on behalf of the state agency. (Tr. 239-45). Plaintiff reported to Dr. Lester that she suffered from sleep disturbance,

---

[1]"GAF," Global Assessment Functioning, is a tool used by health-care professionals to assess a person's psychological, social, and occupational functioning on a hypothetical continuum of mental illness. It is, in general, a snapshot of a person's "overall psychological functioning" at or near the time of the evaluation. *See Martin v. Commissioner*, 61 F. App'x. 191, 194 n.2 (6th Cir. 2003); *see also* Diagnostic and Statistical Manual of Mental Disorders, 4th ed., Text Revision ("DSM-IV-TR") at 32-34.

symptoms of depression, and difficulty with decision-making. (Tr. 241). She also reported

worry spells and avoidance of social situations. (Tr. 242). She reported feeling worthless,

restless, and on edge at times. (Tr. 241). Upon examination, plaintiff was alert and oriented,

cooperative, engaged, and pleasant. *Id.* Her speech was clear and understandable. *Id.* Her

answers were brief and unelaborated at times, but her responses remained relevant and coherent.

*Id.* Plaintiff exhibited an appropriate range of affect with no overt signs of anxiety. *Id.* She

displayed no grandiosity, elevated mood, or any manic traits during the session. *Id.* Dr. Lester

reported that plaintiff's cognitive functioning was in the average range. (Tr. 242). Dr. Lester

diagnosed a generalized anxiety disorder, a panic disorder with mild agoraphobia in partial

remission, and a personality disorder. (Tr. 243-44). He assigned plaintiff a GAF score of 55.

(Tr. 244). Dr. Lester opined that plaintiff's abilities to relate to others and to withstand stress

and pressures associated with day-to-day work activity were moderately impaired. (Tr. 244-45).

He opined that her ability to understand, remember, and follow instructions was not significantly

impaired and her ability to maintain attention, concentration, persistence, and pace was no more

than mildly impaired. (Tr. 244). Overall, Dr. Lester concluded that plaintiff had the mental

stress tolerance to perform, at least, simple repetitive work tasks which would not involve duties

that necessitated public interaction. (Tr. 245).

On December 14, 2007, a state agency psychologist, Alice Chambly, Psy.D., reviewed

the file and completed a psychiatric review technique. (Tr. 281-300). Dr. Chambly opined that

plaintiff had mild limitations in activities of daily living, moderate limitations in maintaining

social functioning and in maintaining concentration, persistence, or pace, and no episodes of

10

decompensation. (Tr. 292). Dr. Chambly concluded that plaintiff was capable of performing simple and moderately complex tasks, and could interact occasionally with others in a superficial manner. (Tr. 298). In March 2008, Roy Shapiro, Ph.D., affirmed Dr. Chambly's assessment. (Tr. 280).

Therapist Schroeder completed a mental functional capacity evaluation for Hamilton County Job and Family Services with a fax stamp dated March 4, 2008. (Tr. 255-56). According to Therapist Schroeder, plaintiff was extremely limited in her ability to carry out very short and simple instructions, work in coordination with or proximity to others without being distracted by them, interacting with the general public, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers without distracting them or exhibiting behavioral disturbances, and travel in unfamiliar places or use public transportation. (Tr. 255). Therapist Schroeder noted marked limitations in plaintiff's ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and be aware of normal hazards in the workplace and take appropriate precautions. *Id.* Therapist Schroeder reported that plaintiff's case was closed and that, when in counseling sessions, she was against taking medication and believed she could not work. (Tr. 256). Ms. Schroeder noted that her opinion was based on short-term therapy. *Id.*

11

On April 17, 2009, plaintiff underwent an abdomen CT scan, which showed gallbladder stones and early mild cholecystitis. (Tr. 335).

## PLAINTIFF'S TESTIMONY AT THE HEARING

Plaintiff testified at the administrative hearing that the main problem preventing her from working was her panic attacks, which she described as a bear chasing her. (Tr. 29-30). She testified that she did not have panic attacks at home. (Tr. 31). She reported fear of being around people other than her family members and problems leaving the house. (Tr. 29-30). She testified that she was not seeing a counselor or other mental health professional. *Id*.

Plaintiff also testified that she suffered from significant memory problems, trouble concentrating, being around people, and handling stress or pressure. (Tr. 32, 40). She did not take medication for these conditions; she reported that she took medication for them in the past, but that the medications did not offer relief from the fear and caused side effects. (Tr. 31-32). She testified that she took blood pressure and cholesterol medication and a water pill, and that she used an inhaler. (Tr. 26).

Plaintiff also reported having carpal tunnel syndrome in both hands for over 20 years. (Tr. 32). The pain starts at her wrist and goes up her arms. *Id*. She also reported stomach pain as a result of her hernia surgery, and that she felt pain and a burning sensation in her feet, but had not sought treatment for her feet. (Tr. 47).

Plaintiff estimated that she could sit for about 15 to 20 minutes and walk for 10 to 15 minutes. (Tr. 38). She estimated that she could lift and carry a vacuum sweeper. *Id*. She reported that she had trouble climbing stairs; that balancing scared her; and that she could not

12

bend, stoop, or squat. (Tr. 39). Plaintiff reported hand pain but said it did not cause her to drop items. *Id.* She also testified that dust, fumes, chemicals, hot weather or real cold weather made her cough. (Tr. 41).

As to her daily activities, plaintiff testified that she could cook, do dishes and laundry, go grocery shopping, clean her home, babysit and play with her five year old granddaughter, drive several times a week, mow the grass in the summer, watch television, read, complete jigsaw puzzles, go to church, and go out with her children. (Tr. 34-36).

## THE VOCATIONAL EXPERT AND THE HYPOTHETICAL QUESTION

The ALJ asked the VE to consider an individual who is limited to sitting, standing and/or walking 6 hours total in an 8 hour workday, frequently lifting or carrying 25 pounds, and occasionally lifting or carrying 50 pounds, and who needs to have a job where she can work in a clean environment where she can avoid dust, fumes, and chemicals. Because of carpal tunnel, she should not use her hands more than 2/3 of the day. (Tr. 53). Based on this hypothetical, the VE testified that such an individual could perform jobs such as a grocery bagger, laborer, and kitchen helper, which he classified as medium, unskilled jobs. (Tr. 53-55).

The second hypothetical involved an individual with the above physical impairments, but who is additionally limited to simple, repetitive tasks not involving public interaction or more than occasional interaction with others in a superficial manner. (Tr. 55-56). The VE testified that the grocery bagger position would be eliminated. (Tr. 56). The VE also testified that plaintiff's testimony would preclude work activity. (Tr. 56-57).

13

**OPINION**

Plaintiff assigns two errors in this case: (1) the ALJ erred in failing to consider the severity of plaintiff's bilateral carpal tunnel syndrome and the resulting functional limitations; and (2) the ALJ erred in her assessment of plaintiff's credibility. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

## I. The ALJ properly considered the severity of plaintiff's bilateral carpal tunnel syndrome in making the RFC assessment.

Plaintiff's first assignment of error asserts the ALJ erred by failing to properly consider the impact of plaintiff's bilateral carpal tunnel syndrome on her RFC. Plaintiff contends her carpal tunnel syndrome would interfere with her ability to do any of the jobs suggested by the VE as the jobs require bi-manual dexterity. (Doc. 12 at 7). Plaintiff argues it was improper for the ALJ to impose a limitation that plaintiff be restricted to using her hands 2/3 of the day without relying on a medical opinion in creating the limitation. *Id.* Plaintiff further asserts that the ALJ committed reversible error by failing to properly consider the impact of plaintiff's diagnosis of bilateral carpal tunnel syndrome in her examination of the VE. *Id.* Lastly, plaintiff contends the ALJ failed to fully develop the evidence regarding her carpal tunnel syndrome and, rather than accommodate the condition, the ALJ should have requested statements from plaintiff's physicians or invited a medical expert to testify at the hearing regarding plaintiff's physical limitations. (Doc. 19 at 3).

Plaintiff's first assignment of error is without merit and should be overruled. The ALJ's decision to limit plaintiff's use of her hands to 2/3 of the day based on hand pain is supported by substantial evidence.

14

Plaintiff was not diagnosed with bilateral carpal tunnel syndrome until October 2, 2008. (Tr. 302). Prior to that date, the record shows only sporadic complaints of plaintiff's hand pain and does not support a finding that plaintiff's hand impairment was as limiting as she now argues. In April of 2007, plaintiff's mental health therapist reported that plaintiff complained of pain in her feet, hands, and back related to arthritis and nerve pain. (Tr. 321). On March 25, 2008, plaintiff informed the Social Security adjudicator that "she thinks she has carpal tunnel syndrome. If she holds the phone for a long time then, her hand will hurt." (Tr. 168).[2] Despite over two years of treatment with Dr. Lenchitz, the only documented complaint of hand pain noted in Dr. Lenchitz's records appears on September 15, 2008, when Dr. Lenchitz noted plaintiff's past medical history as "? CTS bilat — 14 years of paresthesia." (Tr. 307). While the October 2008 EMG report confirmed a diagnosis of carpal tunnel syndrome, it did not specify any particular limitations on plaintiff's ability to use her hands. "[T]he mere diagnosis of an impairment does not render an individual disabled nor does it reveal anything about the limitations, if any, it imposes upon an individual." *McKenzie v. Commissioner*, No. 99-3400, 2000 WL 687680, at *5 (6th Cir. May 19, 2000) (citing *Foster v. Bowen*, 853 F.2d 488, 489 (6th Cir. 1988)). There is no evidence in the record showing plaintiff received any treatment for carpal tunnel syndrome after she was diagnosed in October 2008. Nor has any physician imposed any restrictions on plaintiff's use of her hands subsequent to her diagnosis. The ALJ reasonably concluded that plaintiff's hand impairment was not as limiting as she alleged in light

---

[2] Plaintiff asserts she also reported her hand problems to the Social Security Administration in her October 9, 2007 Function Report when she stated she could only engage in her hobbies (reading, jigsaw puzzles and quilting) for one hour at a time. (Doc. 19 at 2). This assertion misrepresents the content of the report (Tr. 139), which merely lists what hobbies plaintiff has and how often she engages in them. The Function Report contains no reference to plaintiff's hand pain or carpal tunnel syndrome. (Tr. 135-141). Notably, plaintiff did not even identify "using hands" as an activity adversely affected by her illness, injury or condition. (Tr. 140).

of the dearth of medical evidence supporting the extreme functional limitations plaintiff now
claims.

Despite the lack of objective medical evidence showing that plaintiff is limited by carpal
tunnel syndrome, the ALJ gave some credence to plaintiff's testimony and accommodated her
alleged hand pain by finding she was limited to "using her hands to 2/3 of the workday." (Tr.
12). Plaintiff argues the ALJ erred by creating this limitation in the absence of a medical
opinion. (Doc. 12 at 7). In support of this argument, plaintiff cites to a plethora of legal
authority. *Id.* However, the cases referenced by plaintiff are inapposite; these out-of-circuit
cases stand for the proposition that an ALJ may not *substitute* his or her opinion in place of a
physician's, which is not what happened in this case. Here, the ALJ engaged in a review of the
relevant medical documents, including plaintiff's hearing testimony, in determining plaintiff's
residual functional capacity. The ALJ's assessment that plaintiff was limited to using her hands
only 2/3 of the day did not usurp the opinion of a medical provider; rather, it created a
reasonable accommodation despite a lack of objective evidence showing its necessity. *See Poe
v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly
assume the role of a medical expert by assessing the medical and non-medical evidence before
rendering a residual functional capacity finding.")

To the extent plaintiff argues the ALJ should have requested further documentation or
testimony to determine plaintiff's limitations resulting from carpal tunnel syndrome, this claim
must fail. While the ALJ has a duty to fully develop the record in social security cases, *Lashley*,
708 F.2d at 1051, "the burden of providing a complete record, defined as evidence complete and

16

detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." *Landsaw v. Sec'y of H.H.S.*, 803 F.2d 211, 214 (6th Cir. 1986) (citing 20 C.F.R. §§ 416.912, 416.913(d)). Further, the duty to augment the record is triggered only when the record does not present sufficient evidence to allow the ALJ to reach a decision. *Id. See also Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994) ("[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision."). As outlined above, the ALJ had sufficient evidence in the record, including the examination of plaintiff at the hearing, to determine plaintiff's residual functional capacity in light of the bilateral carpal tunnel syndrome diagnosis. Therefore, a remand for additional evidence is not warranted.

The ALJ properly considered the severity of plaintiff's bilateral carpal tunnel syndrome and reasonably accommodated any limitations therefrom in assessing plaintiff's residual functional capacity. The ALJ's residual functional capacity finding is supported by substantial evidence and should be affirmed.

**II. The ALJ's credibility determination is supported by substantial evidence.**

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton,* 246 F.3d at 773; *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky,* 35

17

F.3d at 1036. The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst*, 753 F.2d at 519. In this regard, Social Security Ruling 96-7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96-7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id*. The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every

18

hour, or sleeping on a board); and 7) any other factors concerning the individual's functional

limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and

416.929(c); SSR 96-7p.

In this case, plaintiff contends the ALJ erred in determining that plaintiff was not

credible. Plaintiff argues her activities of daily living are more limiting than the ALJ found and

show she can perform only limited and sporadic tasks. Plaintiff argues these limitations are

supported by her reports to her mental health therapist. (Doc. 12 at 8; Tr. 220).[3] Plaintiff argues

the ALJ erred by equating plaintiff's extremely limited activity to full time work.

Contrary to plaintiff's contention, the Court finds the ALJ properly assessed plaintiff's

credibility in light of the above requirements. The ALJ determined that the plaintiff's allegations

"about the nature and severity of her impairments are not particularly credible." (Tr. 13). The

ALJ considered several factors in making this determination, each of which are supported by

substantial evidence in the record.

First, the ALJ cited inconsistencies between the plaintiff's statements and the medical

record. (Tr. 13). Specifically, the ALJ noted that plaintiff testified she was very limited in her

capabilities as a result of constant fear, whereas the record and her own testimony showed

plaintiff's ability to engage in some normal activities (shopping, church, driving, attending

medical appointments) despite the constant fear. *Id*; (Tr. 34-36) (plaintiff's testimony regarding

her daily activities). The ALJ pointed out further discrepancies where plaintiff testified she had

_____

[3] The only medical documentation plaintiff identifies as supportive of her alleged inability to work is a one page report by Ms. Schroeder, her therapist. (Doc. 12 at 8, citing Tr. 220). Plaintiff does not challenge the ALJ's decision to afford little weight to Ms. Schroeder's opinion.

difficulty handling stress, but was able to drive for 30 minutes and baby sit for her daughter. (Tr. 13). Regarding plaintiff's testimony that she was in fear of having a panic attack, the ALJ noted that there was no evidence of a recent panic attack and, further, Dr. Lester noted in his examination that, despite her claims of anxiety, the plaintiff did not exhibit overt signs of anxiety during their session. *Id.*; (Tr. 242) ("The [plaintiff] did not display overt signs of anxiety such as fidgeting or trembling").

The ALJ further identified a lack of evidence in hospital records from plaintiff's recent in-patient treatment that plaintiff experienced any anxiety during her hospital stay. (Tr. 13). The ALJ cited discrepancies between plaintiff's testimony that she had concentration and memory difficulties and her testimony that she regularly read, watched television, and babysat her grandchildren, and that plaintiff reported no problems with day-to-day memory to Dr. Lester. *Id.*; (Tr. 242-43).[4] The ALJ also cited plaintiff's testimony that her life was terrible as a result of her mental impairments alongside her refusal to take medication to treat these impairments. (Tr. 40);(Tr. 240) (plaintiff reported to Dr. Lester that she was not taking any psychotropic medications stating "because I don't feel it will help. I'm afraid of it , really.").

Further, the ALJ's consideration of plaintiff's daily activities, as one part of the analysis, was proper. As a matter of law, the ALJ may consider plaintiff's household and social activities in evaluating her assertions of pain or limitations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d

---

[4]"[Plaintiff] was alert and oriented X 3. She was able to give her age, date of birth, and the current President, Vice President and the Governor. She was able to relate a current news event and to recall her most recent meal. She recalled six digits forward and four digits backward and three of five objects after a five minute delay. Overall, the clinical impression of her cognitive functioning was in the average range. . . She reports no problems with memory for day to day activities."

20

525, 532 (6th Cir. 1997); *Blacha v. Sec'y of H.H.S.*, 927 F.2d 228, 231 (6th Cir. 1990); *Crisp v. Sec'y of H.H.S.*, 790 F.2d 450, 453 (6th Cir. 1986). *See also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, travelling, cooking, vacuuming and making beds). There is no evidence the ALJ mischaracterized plaintiff's testimony, took her testimony out of context, or placed undue weight on her daily activities in determining plaintiff's RFC. The ALJ's decision reflects she acted properly in assessing plaintiff's statements concerning her ability to clean, travel, go to medical appointments, drive, go to the store, and babysit when considering whether plaintiff was disabled.

The ALJ's decision sets forth in detail the reasons for her credibility finding. (Tr. 13-14). The decision reflects that she properly considered the required facts in determining plaintiff's credibility, including her allegations of anxiety and memory problems. *See* 20 C.F.R. § 404.1522(c). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

Based on the foregoing, plaintiff's assignments of error are without merit and should be overruled.

21

## IT IS THEREFORE RECOMMENDED THAT:

The decision of the Commissioner be **AFFIRMED** and this matter be closed on the docket of the Court.

Date: 2/11/2011

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

SYLVIA MEYER,                                    Case No. 1:09-cv-814
    Plaintiff                          Spiegel, J.
                                                Litkovitz, M.J.
    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).